Good morning, your honors. May it please the court. My name is Selena Kanai. I represent Kaulana Alo-Kaonohi. May I save five minutes for rebuttal? Certainly. So I'll start with my strongest issue and our primary issue, which is about the amount of racial bias that is enough to establish the hate element in 249A1A. To be very clear, I do not have an issue with how the judge instructed the jury on but-for causation. I do have an issue with the way the government argued but-for causation in its closing. The government was able to argue that atop a thousand pounds of non-racial reasons for the assault to have occurred, that race could just be a little piece of straw weighing almost nothing, and that was enough. That race could just be a tiny, tiny factor. And there was a reason the government had to pivot to this theory of guilt, because there were, in fact, a thousand pounds of non-racial reasons for the assault to have occurred. It's critical to realize there was audio captured of this assault, 17 minutes of audio, and there was almost constant screaming and yelling. Both defendant and co-defendant were unfiltered. They were yelling, cursing, saying all sorts of unpleasant things, yet not a single racial epithet was captured on the audio. So the problem we have is that the jury found that this occurred because of his race. Correct. Because of the victim's race. And that's precisely the issue, is that where the government had to pivot to this theory of a thousand pounds of non-racial reasons, but race can be a tiny, tiny... What's wrong with that as a matter of law? You just said you're not challenging the instruction, and we presume the jurors followed the instruction. I think there's two issues with it, Your Honor. One is that the government's camel-straw parable essentially stripped out any meaningful mens rea requirement out of the hatred. The hatred has to be willful. To be able to argue camel-straw parable is not willful mens rea. The camel-straw parable comes from the U.S. Supreme Court authority, of course, in Burrage, but I don't know what you mean in your briefing when you make the distinction between willfulness, as you just did. Can you back up? It feels to me like you're conflating causation with intent there, so I think I'm missing your point. So let me try to break it down. Burrage does sort of say, but for causation can mean camel-straw parable. Right. Burrage does not talk about what willful but for causation means. And it's very clear just reading the statute itself, the hate crime statute, willful is an element of both the and hatred. The Supreme Court case of Bryan talks about, well, what is willful? Willful, the judge instructed on it, essentially means evil mind does the action. So for the government here to have been able to argue something like the camel-straw parable that but for is just a tiny, almost weightless piece of straw does strip out any sort of meaningful mens rea out of the hate was allowed to argue this is that it essentially makes any sort of state court assault a federal hate crime if there is a tiny, tiny bit of racial bias or gender bias or sexual orientation or what have you, whatever protected characteristic we're talking about. I think another example I can give to the court to make this clear is we all know that unconscious bias is a thing. Subconscious bias is a thing. This court has a model jury instruction on it. In our district, I believe we show the Ninth Circuit's video to the jury before they're selected on unconscious bias. So this theory that the government argued did allow the jury to find that, well, maybe we don't believe the victim at all, right, because the audio belied everything he said, but maybe there was some subconscious bias on our client's part, that tiny bit of weightless straw, and that simply cannot and should not be enough for willful, willful mens rea as to hatred. I think to remand for a new trial, this court only needs to find that the way the government was argued to allow willful in this case is enough to get us a new trial because it was an invalid theory of guilt. If I could move to my second point, Your Honors, if you have no further questions on that is the, and I touched on this a little bit, but on the issue of the there's no jurisdictional hook. The government was allowed to argue to the jury, well, all you need here is a tiny, tiny bit of racial bias, and it bears repeating that this is a federal hate crime statute. The federal hook is the 13th Amendment, the enforcement clause. The way the government reads 249A1, at least in this case, is so broad that it can pick up any state court assault and haul it into federal court, and that's precisely what happened here. Our clients were prosecuted in state court. The federal government tracked it. They were not happy with the result of the state court prosecution, and so before the statute of limitations ran out, they bring it into federal court on this theory of a tiny, tiny bit of racial animus is enough. I do have a point three. It's probably not my strongest point on the constitutionality of the hate crime statute. I understand case law is against me, but I can get into it if Your Honors want me to. It's really up to you how you use your time. Okay, then I think what I want to do is, may I pivot to the cross appeal issue? Okay, so we did submit a 28-J letter, Patterson, which discusses this court's recent case, I think from last year, precisely on the application of 3A1.1a. The government's argument down below, and I think on appeal, sort of amounts to, well, it's a hate crime, therefore this enhancement applies to every hate crime automatically, but it's not an automatic application to every hate crime, and I think Patterson, at least the majority, and the concurrence makes that. Well, Patterson is one of a sort of a quirky line of cases, where the enhancement is applied and the question is whether or not the protected characteristic is a proxy, right? Right. And so Patterson involved, I'm sure you know the fact pattern in Patterson? Yes. An individual selecting as a victim through Grinder, and the holding there he didn't hate, he didn't have animus towards gay men. Right. He was using that app, the dating app, if you want to call it that, to select and isolate victims and make them vulnerable. So it's actually, in many ways, a perfect setup for fact pattern for a vulnerable victim enhancement, but not for a hate crime enhancement. That's a really quirky, unique, and discrete set of cases, but how does this case fit into Patterson? I'm failing to see how Patterson changes anything here. Let me talk about how I think Patterson applies and then also move on to the actual enhancement itself and the language there. So I think the Patterson majority and the concurrence said a couple of things that are helpful in deciding whether this sort of enhancement should apply. The majority said that the fact that the victims are from a protected group doesn't mean the defendant was necessarily motivated by animus towards that group. And I think, Judge Kristen, your concurrence essentially says the same thing. It's not sufficient for the characteristic at issue to serve as a proxy. And here, let me dive into the facts a little bit. And this kind of got buried, I think, a little bit maybe. And in preparing for this oral argument, I remembered that there was another white person at the site of the assault, and that was the defendant's actually approached him first. They asked him, are you the homeowner? No, I'm not. It's my nephew. Okay, we don't have a beef with you. We have a beef with the homeowner. So I think that you can say that the home ownership is the proxy for the racial hatred that this enhancement is supposed to be for. He was a homeowner who happened to be white. They did not have an issue with the other white person who was there who was not the homeowner. What do we do with the jury's finding, counsel? Well, the jury's finding is that it applies when the fact finder in a trial determines beyond a reasonable doubt that the defendant intentionally selected the victim because of the victim's race or color. The jury's general verdict on something, as the government said, could be as weightless as a tiny piece of straw is hardly an intentional selection. Judge Seabright's instruction was that race needed to be a but-for factor. It needed to be a determinative factor. That is not intentional selection. But the intentional selection phrase from the guideline was construed by our court in Armstrong. What about the Armstrong case? That seems to be terribly, and it may be dispositive here. So certainly it's a terribly significant hurdle for you. So could you turn to Armstrong? You know, Your Honor, when I was preparing for this, I remember reading Armstrong and thinking that I didn't think it was at all on all fours with the issue in this case. I think if you read the plain text of 3A1.1a, and the commentary supports this too, this is not an automatic application to every hate crime case, right? Determinative but-for causation is not an intentional selection. So, and the judge recognized that. He said that race was the most you could say with this jury is that race was a but-for cause, a determinative cause, but he could not say that the jury's general verdict meant that Mr. Kunzelman was intentionally selected because of his race. And, you know, the United States... So what do we do with the word select that suggests that he's chosen from among others? Does that help you or hurt you? I think in this case it helps. Tell me how. Yes, because I think the fact that the uncle was there, who was also white, was completely ignored, right? Our clients had no beef with him. So they didn't do the selection that we saw was obviously not on account of race. The selection, I would argue, was based on who is the homeowner, and the homeowner happens to be a white person. And Armstrong? Help me out as to why that was an intentional selection. Do you remember the facts? I don't. If you could refresh my memory, because I remember thinking it was inapposite. Armstrong is a case where a black man goes to buy milk, and the attackers don't like black people, and beat him up. That's right. I recall. Okay. So the salient defendant number one was when I said, I'm going to beat that guy up. And his buddies then jumped in and assisted. So one of the buddies argued, well, I didn't select him. The defendant number one did. So it's coming back to me. I think the facts in Armstrong established that the defendants also discussed this person's race. When they saw him in the store, they discussed his race in derogatory ways. They had an actual discussion about, let's go after this guy because of his race. That is non-existent in this case, even with the jury's general verdict. The audio, right, the 17-minute audio, it was all about our client screaming about the easement. You don't have an easement. You cut the chain. You ripped out the fence. Not a single instance of a racial epithet. I think what you're arguing is that the jury could have gone the other way. But we have the jury's finding that this person was victimized because of his race. I keep coming back to that. But I want to give you a chance to respond on Armstrong. Our court held there that the purpose of the guideline is to punish those who have a hate crime motivation and to deter future hate crimes. Although the jury was not asked to find that Armstrong personally selected the victim, Smith, in the first place, it was asked and did find that Smith was the victim of Armstrong's attack because of his race. That is a sufficient reason to impose the enhancement. I'm struggling to distinguish your case from this one. Because I think it's totally different facts, right, that were established as to the race. Well, so focus on this. The jury was asked to find and did find. They did not find here. There was no special interrogatory on the verdict form that says, did you find that the defendants intentionally selected Mr. Kunzelman because he was white. Can I interrupt you there? Yes. Meaning you think because there was another Caucasian person present who was not beaten, you would think the jury and the weight of the evidence was such that the reason was his homeownership, the victim's homeownership, and not his race, and so the jury's finding was insufficient? I do think it was insufficient. I think there needed to be a special interrogatory here that the jury make an additional... So you're not challenging the instructions that the court gave, but you think there should have been another inquiry made of the jury. Yes. Okay. Yes. Judge, do you have questions? I do have one question and I should know it, but I can't remember. With respect to the enhancement, the intentionally select, what's the standard of review? Is it a discretion or de novo? I believe it's an abuse of discretion, Your Honor. And the government can disagree if it wishes. Okay. Thank you. I still have five minutes left. I don't necessarily want to spend it on an issue that the judges don't have a question on. You can spend it however you want. I don't think we have any questions for you at this point. Welcome to reserve it if you want. I'm going to reserve it then. Thank you. You bet. All right. We'll hear from the government. May it please the court. Yael Bortnick for the United States. As the defendant stated this morning, his primary issue on appeal is the amount of racial bias and a challenge to the government's few statements of representing a tiny factor. The defendant argues in briefing that that amounts to a Yates error, but a Yates error is when a jury is instructed on alternative theories of guilt and returns a verdict that may rest on an invalid one. Here, the defendant has affirmatively waived any challenge to the jury instructions, so there simply was no Yates error. The government's statements in closing were not an error of any flavor. As this court has noted, they are consistent with the traditional but for causation standard. So your argument is that what the lawyer argued was in fact a correct statement of the law and that would have been a correct instruction to the jury that straw the camel, breaks the camel's back is sufficient? Yes, your honor. It is. And what do you do with the question of implicit or subconscious bias? That question wasn't presented in this case. The government clearly argued that the defendant... Let me ask you this. I'm trying to figure out what we're supposed to do with respect to the law. We're all familiar with the concept of implicit or unconscious bias that, you know, we may not even be fully conscious of it, but it may nonetheless be a motivating factor, maybe even a very small motivating factor. Is that enough to make it a hate crime under your view of the statute? No, your honor. Why not? A motivating factor is not sufficient, but for causation is a higher standard than that. Wait a minute. You're talking language I'm not sure I understand. When you say motivating is different from but for, what do you mean? So the Sixth Circuit's opinion in United States v. Miller directly addressed the because of standard in the context of 249A2, and the government pre-Burge used to argue that race just had to be a motivating factor. It didn't need to be determinative. It didn't need to be necessary as long as it was a significant motivating factor, that was enough. Post-Burge, the Sixth Circuit and Miller held that race does need to be a but for cause. It needs to be a necessary factor that if you changed the victim's race, this assault would not have happened. That is a high standard that the government needs to meet. Miller also used... Wait a minute. If it's a straw that breaks the camel's back, that strike means a low standard, not a high standard. Well, Miller did agree with the straw that broke the camel's back analogy, and in that case, it said that there was religion. It had to do with beard shaving of Amish victims, that the religion had to be the straw that broke the camel's back. It's not that it's a tiny factor. That alone is not sufficient. It's a tiny factor that's determinative. You just... Straw that breaks the camel's back is a tiny factor. By definition, it's a tiny factor. Yes, Your Honor, but it's not a tiny factor alone. Without the straw, the camel would stay standing. With the straw, the camel collapses, so it plays a determinative role. It's a sufficient factor is the point. We're not trying to give you a hard time, but it's a tiny factor. That's why they use the analogy for straw that broke the camel's back. Yes, Your Honor. Right. But it still has to be a but for cause. Without the defendant's race, this wouldn't have happened, and while the government... So then come back to my talk about unconscious bias, because I think if there is unconscious bias, and it exists, and it has some consequence, well, bingo. I think it's the straw that broke the camel's back. Why not? I think it would be very hard, if not impossible, for the United States to prove that unconscious bias was a but for cause. Let's assume that proof is not a question. Let's just assume that there is unconscious bias, and that it has some consequence with respect to behavior. Does that mean that unconscious bias then can produce a guilt verdict? Is it then a but for cause? Not if it has some motivation with respect to the conduct, if it was a necessary factor. Often in these cases, people claim that they weren't racist, that I'm not racist, I just believe... No, I understand that, but I don't think you answered my question yet. Let's assume that there is some unconscious bias. Why is that not the straw that broke the camel's back? Unconscious bias, I just have a hard time seeing how the government could prove that that's a... That's a different question. Another question of proof. Let's just assume that there is. Yes, your honor. I think it depends on the definition of unconscious bias, and if it's a defendant who states, I'm not biased, this defendant, I believe in sentencing, stated he wasn't racist, and the district court said, but you are racist on that day. If his conduct shows that it was because of race, I think that's sufficient. But again, the defendant doesn't have standing to argue that the statute would be unconstitutional in some applications. Here, the government didn't say that race was a tiny factor. It said, you should find that race is at the core of this assault. It said that at least half a dozen times in closing, including immediately after the straw camel analogy. What you're really arguing now is harmlessness. I think our first argument is that the straw analogy is proper, but if the court disagrees, I do think any error in using the tiny factor framing was harmless, your honor. I don't think opposing counsel challenges the instructions. We started with that, and that makes that tough. But I think after discussing it back and forth, opposing counsel's argument is that the instructions were fine as far as they went, but the jury should have been asked to make the special finding. What is your response to that? My understanding is that the defendant was only asking for the special finding as to the as to the statute itself. The jury was properly instructed on the two elements of section 249, and it found the defendant guilty. The defendant isn't challenging the jury instructions. They're not arguing there was prosecutorial misconduct. They're not arguing that there was insufficient evidence. I think that's enough to support affirming the defendant's conviction. What about the enhancement? Were they entitled to a special interrogatory from the jury to make this finding? No, your honor. This court in Armstrong, as well as the four other circuit court of appeals that have considered this issue, have all held that no special jury verdict as to selection is necessary. That's right. I think Armstrong is terribly difficult, but none of those cases have talked about inherent bias or implicit bias, and you were invited to do so. Since the government did make the argument about tiny, tiny reason, you're trying to, it seems to me, abdicate this two different ways. On the one hand, you responded to Judge Fletcher's question by saying, or maybe it was Judge Desai's question, by saying that the government argued that this was really core and quite an egregious example of race-motivated crime, but that's not what was to the jury, and so it is the argument to the jury that prompts the appeal and prompts our inquiry about implicit bias. Well, I think if you look at the phrase tiny factor in context, that's not what the government argued. It went through the straw camel analogy simply because that's how the Supreme Court explains but-for causation to people less familiar with the standard. It says the straw in that case is a tiny factor, referring to the straw, but it was necessary. Without it, the camel stands. With it, it falls. Therefore, it's a but-for cause. Then the government pivots to this case and says, you have to find race was a necessary factor, and here you should find it's at the core. Immediately before and immediately after, each time the government used the word tiny, it said race is at a core, and this is a necessary factor here. Fairly understood, it seems to me, as I read the government's argument. It is the straw that breaks the camel's back. That's all they needed, all the jury needed to find. Otherwise, why even say the straw that breaks the camel's back? Just to explain the concept of but-for causation. Well, I understand. I understand it, and once having explained the concept, that's the concept the government wants the jury to have in mind. Straw that breaks the camel's back, so that's enough. And that's what the Supreme Court has said. That's what the Sixth Circuit has said in Miller with respect to 249A2, that a determinative factor is sufficient, and here the jury found race was sufficient. Additionally, the jury is presumed to follow the instructions. Here, the jury was instructed three times before trial began, three times at the conclusion of trial, both before and after closing arguments were given, that arguments of counsel are argument, that they're not evidence, and that the jury is supposed to follow the evidence and the laws set forth in the instructions. When the trial court was struggling with whether to apply this enhancement, I think he said, I would make this finding if I could. He seemed to, or I'm paraphrasing his statement, he seemed to be quite persuaded by the evidence that, right, but he said he thought he couldn't as a matter of law is the way I read that, and I struggled to understand that in light of Armstrong. So I wonder, did the government not argue Armstrong at that point? It was argued below. Armstrong was a pre-Burge case and applied the motivating factor test, and I think the court was somehow confused that that was that poor causation is a higher burden that the government did meet in this case, so I see. The findings there, if anything, it's stronger here that the victim was intentionally selected when the defendant intentionally harmed him, and that because of race is the same in both statute, the statute and the enhancement. I'm sorry, you think that this is a stronger case than Armstrong for applying the guideline? Yes, if you look at what the judge said in sentencing, he said the defendant made a conscious choice to go to this property and to do this because it was racially motivated. Race played a role in this assault. This wasn't somebody, you know, out somewhere. They consciously went to seek his private property. What do you say, though, in response to your opposing counsel's argument that what they were really doing was selecting the homeowner and not anybody? That race wasn't the reason that the victim was selected, but instead that he was the homeowner, and in fact that there was another person on the property who wasn't the homeowner that wasn't selected. I believe that there also was bodily injury to CK's uncle. That's evidence in the record, so I don't believe it's a factual matter. That's necessarily true, but I don't think it negates the jury's finding here that the defendant willfully caused bodily injury to CK because of his race, and I think that's sufficient to meet the enhancement. If you look at the... But those are different questions. Because of his race, the guideline says intentionally select. Select means choose as among others, so where's the select come in, in your view? In the intentionally caused bodily injury, and that's what Armstrong... I'm asking you, but what do you do with the word select? By it choosing to injure, willfully choosing to injure CK, that was the selection. But selecting means choosing this person rather than that person. I don't think that's how the hate crime enhancement has been applied in other... How can it mean anything other than select? Select means choose. I think it was written broadly to cover a range of hate crimes. 245 says willfully injure, intimidate, or interfere. 247, the church arson act deals with intentionally defacing, damaging, or destroying religious... But you're now... It was written broadly. Please. Counsel, there's a question pending that you need to grapple with, please. You're now reading from the statute. I'm reading from the guideline, and the guideline says select. Select says you choose. Where's the selection here? They selected CK by going to his property and willfully causing bodily injury to him. That's a selection I think this court in Armstrong had in mind. Well, it's very easy to see select in Armstrong. We have a bunch of white thugs who don't like black people, and they choose some guy who's going out to buy milk, who's, except for the fact that he's in their vicinity, is indistinguishable from anybody else. So it's clear that they quote selected him. Here it's less clear to me how the word select can apply, because it's not as though we've got 10 white people, and they choose this guy. They've got a homeowner. They don't like the fact that he's a homeowner. It may have something to do with the fact that he's a white homeowner. I get that. That's the statutory conviction. But intentionally select is something on top of, so it's a guideline that increases the sentence. Help me understand what the intentionally select have to mean. I think if there's any ambiguity in the enhancement, the commentary and the history makes clear that this was intended to cover hate crime violations, including the Shepard-Byrd Act, which enacted 18 U.S. ... And in your view, the guideline automatically applies anytime you've got a hate crime? I think that the elements of a hate crime do meet the elements of the enhancement. Yes. I mean, that's essentially your argument, that a separate instruction wasn't necessary, because once there was an instruction with respect to the willfully caused bodily injury, that was enough to satisfy the guidelines. Yes, as well as the because of. So can I just jump in that, because I think you're maybe eliding something. You've been asked a couple of times, is it your position, or basically you've been asked and you haven't answered it, whether or not it is your position that this enhancement will apply to every hate crime? And it seems to me that it would have to. But that's a function of the way the guidelines are packaged, right? And so this criminal assault statute is what the base offense level is here. So his base level calculation here was for aggravated assault. That doesn't factor in any hate motivation at all after this conviction. But for this enhancement, there wouldn't be any punishment for that motivation. And that's going to apply every time, isn't it? Correct, Your Honor. This enhancement applies when convicted of a hate crime. That's clear in the commentary where it says it applies to hate crimes. And if you look... The reason it's important to explain that, counsel, it's because otherwise our brains immediately go to double counting. And this is a function of the fact that the base offense level is tagged to, pegged to, aggravated assault. So that's why you've been asked. But I just want to be really clear about the government's position on this. This enhancement, I think, would apply every time. Yes, Your Honor. Okay. As long as there's the finding that the victim was chosen because of his race, or whatever the protected characteristic is. Exactly, Your Honor. Okay. So to go back to Armstrong then, because I do think that opposing counsel makes a point here about Armstrong and selection, because the guideline uses that word. But we grappled with that in the case. I didn't see Armstrong as helpful in this case to the defendant because he doesn't have the fact pattern they had in Armstrong, which is the first defendant said, I'm going to beat this guy up. And it was because of his race, very clearly in that case. And then the other guys jumped in. So I understood Armstrong to be defendant number two, arguing I didn't pick him. My buddy did. But in this case, I didn't see anything of the two defendants. And there appeal has now gone away. But I didn't see anything in the fact pattern that would have supported the notion that the co-defendant is the person who initiated this beating. No. In fact, I think the fact pattern seemed to be, and I think Judge Seabright said as much, that this co-defendant was the primary aggressor. Yes, Your Honor. They didn't raise that argument here, that the co-defendant was the one who selected. When you say here, I'm not trying to split hairs, but you mean here on appeal, or do you mean in the district court? I don't believe either in the district court or on appeal. They raised that it was the co-defendant who really selected the victim. They said that they needed to have a special jury verdict as to selection. But the history of the Shepard-Byrd Act makes clear that Congress intended the enhancement to apply to all hate crime convictions under the Act. In the same Act in which Congress enacted Section 249, it amended the definition of hate crime for purposes of the enhancement to add gender identity, since that was a new protected characteristic in 249. And then it amended the enhancement itself to make sure that the enhancement covered the full scope of hate crimes that- We appreciate that. We've read the briefing and we want to thank you for it. But can we back up and go back to this question that my colleagues and I are trying to tease out? The instructions here are not challenged. Judge Seabright was, I think, very thoughtful in trying to figure out what was the right answer on the law. He's a very diligent judge, as you know. And he said, I'd find it if I could. As I read the record, I think he was not at all concerned that there was about a sufficiency of the evidence problem. And he understood that he's got this finding from the jury. But there wasn't a specific interrogatory asked or an instruction that asked this other question. And the district court said, I'm not blaming anybody. Nobody asked for this. But I don't have it. And he thought he couldn't impose the enhancement without it. So whether we decide that was necessary or not is one question. But a different question is, who has the burden there? Who's going to bear that? If we decide that's error, how does that analysis look? So it's de novo review because it's about the legal interpretation of the enhancement. That's the standard. Whether the legal argument is correct. So I think that we're asking this court to vacate the sentencing remand for resentencing for the district court to reconsider it with the correct standard in mind that intentional selection doesn't require a special jury verdict. And here, the nature of the conviction meets those elements. Do I decide to have other questions, Judge Fletcher? No, I don't think we have any other questions for the government. Thank you. Thank you for your argument. 3A1.1a, on its face, the commission could have said, this enhancement applies to every single hate crime. It specifically doesn't say that. And that was one of Judge Seabright's issues with why he didn't think that he could just automatically apply it. Yes, but you're not taking issue with what I said about the base offense level, are you? It's an aggravated assault. It wouldn't account for any motivation here. Correct. I think that's correct. All right. And so, yeah, it wouldn't account for it at all. And can you go back to Armstrong then and tell me why we haven't grappled with your exact argument about selecting the victim? Because I think the facts in Armstrong, I hear, Judge, that you disagree with me on it, but I think they were so different from this case where there was a discussion amongst the defendants about this person's ethnicity and let's go after him because of that. I understand the second defendant said, I didn't select, but that was the evidence. And that is not existing here. The commentary to 3A1.1a, I think, is also instructive. It talks about subsection A applying to offenses that are hate crimes. Again, not all hate crimes. And that special evidentiary requirements govern the application of the subsection. And the way I read that, and I believe the judge read that, is there needed to be a special finding by the jury here, at least on these facts, that there needed to be an intentional selection and that did not exist. I'm not sure you need a special finding by the jury. I think it's sufficient that the judge have that. But then the question is, did the judge make a mistake? But I don't think you need a special finding of the jury in order to apply the enhancement. I mean, perhaps, but I would point to what Judge Seabright said about that. He was troubled by the fact that he said something to the effect of, the court is more restricted where there's a jury finding than when there's not, which he thought was odd. That doesn't generally happen in sentencing guideline issues. But that was troubling to him. He knew he had the because of finding, and then he said that it, the judge, could not conclude that the jury necessarily found that the victim was intentionally selected because of his race. Right. Intentionally selected is really different from determinative, but for cause. And if the sentencing commission did mean for this to apply to every hate crime case, they simply could have said that, or- Problem you've got, again, I'm just going to give you one more chance at this. And I'm only one of three. But in Armstrong, what we said was that the finding that because of was sufficient. We specifically said the jury was not asked to find whether Armstrong personally selected Smith in the first instance. It was asked, and it did find that Smith was the victim of Armstrong's attack because of his race. That is sufficient.  But I don't think you can ignore the facts, right? Okay. So you're distinguishing on the facts. Yes. I appreciate that. Yes. And selected because of, this is where the select is in there. Correct. And I think this was another thing that the judge grappled with as well. If the commission really meant for this to apply to every hate crime, they would have just tracked the language of the hate crime statute instead of choosing this phrase that doesn't appear anywhere in the hate crime statute. And I think that was an issue for him as well. If I could go back to what Judge Desai talked about, a little bit of the harmlessness issue. You know, the jury deliberations on this were lengthy, surprisingly lengthy, given that there was just one sole issue of, well, was this racially motivated? Was the hate driven by a racial animus? Jury deliberations took a full two days with the judge, the jury struggling on this rather simple, narrow issue. And I believe there's case law that supports the notion that the longer jury deliberations go on, the less likely it is for error to be harmless. And I think that's precisely the issue that we have here. Judge Flesher. I think that the argument that was made, that I made the comment about harmlessness or that I think the government's arguing harmlessness in addition, in the alternative, is because the instruction, the actual, regardless of what the statements made by the prosecutor were in closing and the discussion about the tiny, tiny factor, putting that aside, the jury instruction used the correct standard. And I think you've conceded that point. So the question that I have is why doesn't the use of the correct jury instruction and I think the repeating of that instruction multiple times not cure any error in the perhaps incorrect explanation or the camel broke the straw parable. Understood. I have two responses to that, Your Honor. First of all, the straw that broke the camel's back. I apologize. Yes, the camel straw parable. The camel straw parable was not just a throwaway argument that the government made in closing to simply explain but for cause. I think if I- But it seems like you're either arguing prosecutor misconduct, and I don't think you are, or you're arguing a jury instruction. You're not arguing that either. So what do we do? Where do we categorize this? I'm trying to figure out what your argument is. The prosecutor was allowed to argue an invalid theory of guilt when it was allowed to argue camel straw parable. It's difficult for you because under Burrage, that's not an invalid causation standard. But Burrage- I think that's why we're here, given this evidence, unfortunately. But here we are. And you're not challenging the instruction. But what I'm challenging is that Burrage does not talk about a willful mens rea. Right? Willful has to mean something more than just a tiny, tiny bit. And I think that pivots to my second issue, which is that there's a real federalism issue. If any time the federal government sees a state court assault between people of two different ages, races, sexual orientations, what have you- Doesn't that really go to sort of the prosecutorial discretion? I don't hear the government saying that they believe every single state assault, even with an implicit bias, were to exist, would be something that they would pursue as a hate crime. That's sort of where the discretion of the prosecutor comes into play. Right. But I think upholding a conviction on this grounds certainly gives them the power and the discretion to do that where they want to. I see my time is up, Your Honors. If there are no other questions. I don't know if there are. Looks like there are not. Thank you both for your careful preparation. We'll take that matter in advisement. We'll go on to the next case on the calendar. Just for planning purposes, we're going to take this next case and then take a quick recess before we hear the last two.
judges: FLETCHER, CHRISTEN, DESAI